**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**(SOUTHERN DIVISION)**

**EAGLE SPIRIT LLC**, a Michigan limited liability company, and **NOBLE SPIRIT, LLC,** a Michigan limited liability company, on behalf of themselves and all others similarly situated and,

Case No.:

          Plaintiffs,

vs.

**MILTON TOWNSHIP,** a township within Antrim County, **SARA KOPRIVA**, in her official capacity as Zoning Administrator of Milton Township, **MILTON TOWNSHIP BOARD**, **CHRIS WEINZAPFEL**, in his official capacity as Supervisor of Milton Township and member of the Milton Township Board, **JANET BEEBE**, in her official capacity as Clerk of Milton Township and member of the Milton Township Board, **ELIZABETH ("LIZ") ATKINSON**, in her official capacity as Treasurer of Milton Township and member of the Milton Township Board, **BRUCE VELIQUETTE**, in his official capacity as Trustee of Milton Township and member of the Milton Township Board, **JOE RENIS**, in his official capacity as Trustee of Milton Township and member of the Milton Township Board,

          Defendants.

_____/

**CLASS ACTION COMPLAINT FOR**
**INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs, EAGLE SPIRIT LLC and NOBLE SPIRIT, LLC, by and through undersigned counsel and on behalf of a class of similarly situated property owners within Milton Township, Antrim County, Michigan, file the above-captioned Class Action Complaint for injunctive and declaratory relief against Defendants, MILTON TOWNSHIP (the "Township"), SARA KOPRIVA, the MILTON TOWNSHIP BOARD, CHRIS WEINZAPFEL, JANET BEEBE,

1

ELIZABETH ("LIZ") ATKINSON, BRUCE VELIQUETTE, and JOE RENIS (collectively "Defendants"). Plaintiffs hereby allege as follows.

### Introduction

1. Effective November 29, 2025, Milton Township adopted an amended vacation rental ordinance to govern short term rentals. (Section 113.000-.118 (the "STR" or "STR Ordinance,") attached as Exhibit 1.) When adopting the STR Ordinance Milton Township's Board expressly stated their desire was to forever end short term rentals. Consistent with this objective, the STR Ordinance includes numerous arbitrary, discriminatory, irrational and unconstitutional provisions that arbitrarily and capriciously prohibit a property owner from deriving economic benefits from their property.

2. The express goal of STR Ordinance is to ensure "vacation rentals … *cease to exist within the Township*." (10.04.2025 Beckett & Raeder Report to Milton Township Board at 1, attached as Exhibit 2.) This goal is hardly surprising as Township officials have expressed their opinions on several occasions that they wish to eliminate short term rentals. For instance, Defendant Liz Atkinson has been quoted as follow: "A lot of people, now that they have experienced a short-term rental in their residential area, regret voting for allowing short-term rentals. When you introduce something that brings in a lot of people that aren't your neighbors and it's a bunch of strangers, basically, that are just running through in a transitory nature, it will become a problem." The Ordinance, in design, construction and effect, is intended to lead to the elimination of short term rentals entirely in the Township.

3. This goal of eliminating short term rentals through arbitrary and irrational provisions is counter to the interests of many in the Township—owners and others—who benefit from such economic activity. In fact, members of the community, homeowners, and businesses

depend on this economic activity for their fiscal survival.

4.      This lawsuit specifically challenges, among other things, (1) the facial validity, on constitutional grounds, of the application of the STR Ordinance to all short-term rentals but not to similarly situated bed and breakfasts; (2) the Ordinance's arbitrary spacing restriction prohibiting STRs within 1,000 feet of each other; (3) the Ordinance's arbitrary "rolling vacancy requirement" that prohibits any property from being rented for more than two weeks during any four-week period; (4) a "six-week annual cap" on the total weeks of permitted STRs in any calendar year—in other words, for nearly 90% of any year, STRs are completely barred; (5) an arbitrary absolute occupancy limit of ten individuals without any regard to the size of the home or the property; (6) an arbitrary absolute daytime presence cap of fourteen total individuals on the property without any regard to the size of the home or the property, or the event; (7) a requirement that any rental be for a minimum of seven days; (8) a vague and illegal prohibition on any "special events" on the property; and (9) requirements to maintain and turn over prospective rental information to Milton Township without any showing of need.

5.      Plaintiffs seek declaratory and injunctive relief on their behalf and on behalf of other similarly situated property owners to bar enforcement of these unconstitutional and irrational restrictions which impose unfair and unconstitutional burdens on property owners.

6.      Under the STR Ordinance a "vacation rental" is defined as any property that is rented "for a period of less than thirty (30) consecutive calendar days, counting portions of calendar days as full days, regardless of the number of days listed on the lease (i.e. subletting)." STR § 113.104. A "[v]acation rental," however, does not include "a Bed and Breakfast." *Id.* A "Bed and Breakfast" is defined in the Milton Township zoning code as "[a]n owner-occupied single family dwelling containing one (1) or more rooms which are provided for gain, for the

traveling or vacationing public as temporary accommodation." Zoning Ordinance § 117.201.

7. Under the STR Ordinance, if a property owner who rents property for less than thirty (30) days and is not a Bed and Breakfast but happens to be within 1,000 feet of another vacation rental property, no rentals are permitted *at all*. This arbitrary "spacing restriction" advances no legitimate government interest and interferes with investment-backed expectations of property owners. There is simply no rational basis for treating a property owner 998 feet away from another short-term rental property, differently than a property owner 1,002 feet away. The spacing restriction arbitrarily suppresses competition, preferences current permit holders, and prevents new entrants from entering the vacation rental market. The spacing restriction also is internally inconsistent since the Township exempts bed and breakfasts from the restriction, as well as properties within the Village, and the restriction does not apply to rentals of more than thirty days (which are definitionally not "short term" rentals).

8. The Ordinance also adopts an arbitrary and illogical "rolling vacancy" requirement that prohibits rentals "for more than two weeks (2) during a four (4) week period unless leased to one renter for a minimum of three (3) and up to four (4) consecutive weeks." STR § 113.105.B. This "rolling vacancy requirement" is likewise irrational and unrelated to any legitimate governmental interest. There is no logic justifying a prohibition on rentals for more than two consecutive weeks in any four-week period given that a rental of five weeks or more would not even be subject to the STR Ordinance. There is no rational basis for concluding that three consecutive rental weeks somehow harm the Township, but three separate rental weeks, or five consecutive weeks do not. In reality and by design and effect, this rolling vacancy requirement is targeted to suppress the viability of rentals. An example illustrates the point. One property owner rents their property for two weeks in June, then for two weeks in August.

Another property owner rents their property for five consecutive weeks.  A third rents their property for the last two weeks in June, and then the second and third weeks in July. The third owner is in violation of the STR Ordinance; the first is not based on calendar sequencing; the second is not because the rental is longer than 30-days thus exempt from the STR Ordinance altogether. But all these rentals pose equal impacts on the Township in terms of parking, traffic, septic, etc.  Indeed, the owner not subject to the Ordinance *at all* poses the greatest impact. There is no rational basis for this restriction, which unconstitutionally burdens the owner's private property rights.

9.       The Ordinance establishes a six-week per year total cap on the number of weeks property may be rented.  STR § 113.105.A. Thus, for nearly 90% of any year, STRs are barred. This "six-week annual cap" is arbitrary.  Again, an illustration makes the point.  The STR Ordinance applies to rentals of less than 30-days.  Thus, the Ordinance would not speak to successive rentals of 31-days.  A property owner could enter into successive 31-day leases and rent the property for up to 48 weeks (*i.e.* 92% of the year) without any restriction whatsoever. What then is the purpose of this ban?  The Township's consultant was clear:  If the ordinance were adopted: "In time, through attrition, vacation rentals will cease to exist within the Township." Ex. 2, at 1.  This is the improper goal of the de facto 90% ban.

10.       The Ordinance's ten-person occupancy cap (§ 113.107.B.2) is constitutionally infirm because it imposes an arbitrary and irrational limit on the number of individuals who may occupy a dwelling that is untethered to any legitimate health or safety metric—such as square footage, total property size, or fire code—and instead functions as a blunt restriction on use. By allowing occupancy to vary based on the number of bedrooms but then overriding that standard with a hard ten-person ceiling, the Township treats similarly situated properties differently

without a rational basis, raising equal protection concerns. At the same time, the cap intrudes on fundamental property rights by severely limiting the economically viable use of residential property for lawful short-term rental activity, suggesting a lack of substantive due process. Where no comparable limitation is imposed on longer-term rentals or other residential uses, this limitation is arbitrary, irrational and advances no legitimate government interest.

11. The Ordinance's fourteen-person presence daytime cap (§ 113.107.C) on the total number of individuals who may be present on the property during the daytime is constitutionally infirm because it extends beyond regulating use to directly controlling private gatherings in a manner that is arbitrary and not meaningfully tied to legitimate health or safety concerns. Unlike traditional occupancy or fire-code limits based on square footage or egress capacity, this flat cap applies regardless of the size of the home or lot, thereby treating vastly different properties the same without a rational basis, raising equal protection concerns. It also intrudes into core property and liberty interests by restricting ordinary social and familial association on private property—effectively criminalizing commonplace gatherings like family reunions, birthday parties, anniversary celebrations or the like—without narrowly tailoring the restriction to address noise, parking, or nuisance concerns, which are already regulated through less restrictive means. As such, the provision is unconstitutional as an overbroad and irrational interference with lawful use and associational freedoms.

12. The Ordinance's seven-night minimum stay requirement (§ 103.105.C) is constitutionally infirm because it arbitrarily restricts the lawful use of residential property without any demonstrated connection to legitimate governmental interests in health, safety, or welfare. By prohibiting shorter rentals regardless of the property's size, occupancy, location, noise history, or actual impacts, the provision operates as a blunt and irrational restraint on

6

property rights that bears little relationship to nuisance prevention and instead, when combined with the rolling vacancy requirement, appears designed to suppress short-term rentals altogether. The requirement is both overinclusive and underinclusive: it bars quiet, low-impact weekend or three-night family rentals while permitting longer stays that may generate even greater impacts. Such arbitrary line-drawing supports substantive due process and equal protection challenges because the Township cannot plausibly explain why a six-night rental is inherently harmful while a seven-night rental is acceptable. The restriction also substantially interferes with owners' economically beneficial use of their property by eliminating the most common and commercially viable short-term rental durations, thereby functioning as a de facto prohibition on ordinary vacation-rental activity. Moreover, because hotels, inns, bed-and-breakfast establishments, and other transient lodging uses are typically not subject to comparable duration mandates, the Ordinance irrationally discriminates among similarly situated lodging providers without a legitimate basis.

13.    The Ordinance's blanket prohibition on "special events" and "lawn parties" at vacation rental properties (§ 103.107.F) is constitutionally defective for multiple independent reasons. Most fundamentally, the prohibition is impermissibly vague because the Ordinance fails to define what constitutes a "special event" or "lawn party" leaving property owners, renters, neighbors, and enforcement officials without any objective standards to determine what conduct is prohibited. The undefined term could sweep in ordinary and constitutionally protected gatherings such as family reunions, holiday dinners, birthday celebrations, graduation parties, religious observances such as Shabbat dinners, weddings, political meetings, charitable gatherings, or social dinners, thereby inviting arbitrary, selective, and discriminatory enforcement based on the subjective views of Township officials or neighbors. The prohibition

also burdens the constitutional right of association by restricting individuals' ability to gather with family, friends, religious groups, political or social organizations within a private home, which lies at the core of protected liberty and associational interests. In addition, the Ordinance is substantially overbroad because it prohibits all "special events" and "lawn parties" regardless of size, noise level, parking impact, duration, or actual nuisance conditions, even though the Township already possesses narrower and less restrictive tools—such as noise, parking, nuisance, trespass, occupancy, and disorderly conduct ordinances—to address genuine secondary effects. The prohibition further violates substantive due process because it bears no rational relationship to legitimate governmental objectives and instead appears designed to suppress lawful use of private property based on speculative fears rather than actual misconduct. It likewise raises equal protection concerns because similarly situated gatherings occurring at owner-occupied homes, long-term rentals, hotels, bed and breakfasts, churches, clubs, and other venues are not categorically banned. By criminalizing undefined social activity in a private residence without clear standards or meaningful tailoring, the Ordinance intrudes deeply into protected property, privacy, and associational rights while conferring unbridled enforcement discretion on the Township.

14.     Additionally, the Ordinance burdens property owners who wish to rent their properties with intrusive requirements to advise the Township in advance of incoming renters, and  to maintain and produce records. STR § 113.108.C.  The Ordinance treats vacation rental owners differently from bed-and-breakfast operators and in that way discriminates against vacation rental property owners.

15.     For these and other reasons, the new STR Ordinance provisions challenged here should be struck down on constitutional grounds. The new Ordinance became effective on

November 29, 2025, following adoption of the most recent amendment on October 27, 2025. This action is timely.

## Parties

16.    Plaintiff Noble Spirit, LLC is the owner of real property in Milton Township, Michigan which it acquired on or about September 12, 2002.

17.    Plaintiff Eagle Spirit LLC is the owner of real property also in Milton Township, Michigan which it acquired on or about January 12, 2021.

18.    Defendant Milton Township is a township located in Antrim County, Michigan.

19.    Defendant Sara Kopriva is the Zoning Administrator for the Township and is designated by the Township to enforce the Ordinance.  She is also an employee of the Township's consultant, Beckett & Raeder.

20.    Defendants Milton Township Board, Chris Weinzapfel, Janet Beebe, Elizabeth ("Liz") Atkinson, Bruce Veliquette, and Joe Renis (collectively, the "Board") are all responsible for hearing and resolving appeals of STR Permit revocations performed by the Township.  They are sued here in their official capacities.

## Jurisdiction and Venue

21.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 2201 & 2022, and 42 U.S.C. § 1983, as it seeks declaratory and equitable relief under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, among other things.

22.    Plaintiffs own real property located within the Township. Plaintiffs have applied for, paid all fees for, and (in the case of Noble Spirit) been issued an STR Permit for that property by the Township pursuant to the Ordinance as it existed prior to the Amendment.

23.    Defendants are the Township or otherwise officers thereof designated with

enforcement, permit revocation, and appellate review authority under the Ordinance.

24.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2) because Defendants are present in the Western District of Michigan and the events giving rise to the claims asserted herein arose there.

## Common Allegations

25.    Pursuant to Section 113.102.A of the STR Ordinance, its purpose and intent is "to establish standards for transient lodging activities within dwelling units so that these activities will not be detrimental to the character and livability of surrounding neighborhoods."

26.    The Ordinance defines "Owner" as "[t]he person or entity that holds legal or equitable title to the private property" to be permitted. § 113.104.

27.    The Ordinance defines "Local Contact Person" as "[a] local manager, owner, or agent of the owner, who is available to respond to tenant and neighborhood questions or concerns, or any agent of the owner authorized by owner to take remedial action and respond to any complaints." § 113.104.

28.    The Ordinance defines a "Dwelling Unit" as "[a] group of rooms located within a building and forming a single habitable unit having facilities which are used or intended to be used for sleeping, cooking and sanitation purposes." § 113.104.

29.    The Ordinance defines "Vacation Rental" as "[a] property containing a Dwelling Unit that is occupied by any person, other than the primary Owner, for monetary consideration, for a period of less than thirty (30) consecutive calendar days, counting portions of calendar days as full days, regardless of the number of days listed on the lease (i.e. subletting)." § 113.104. "A Vacation Rental does not include a Bed and Breakfast permitted and operated in accordance with the Milton Township Zoning Ordinance." *Id.*

30.     At Section 113.105.A-B of the Ordinance, vacation rentals are limited to no more than six (6) weeks within a single calendar year, and limited to no more than two (2) weeks during any four (4) week period. The "no more than two weeks in four" provision is referred to herein as the "rolling vacancy requirement."

31.     Section 113.105.C provides that vacation rentals "[s]hall have a minimum length of rental period of seven (7) days."

32.     Section 113.105.D creates an exemption to the above limitations based on which zoning district the permitted property is located in.

33.     Section 113.106.A arbitrarily limits the density and proximity of vacation rentals, requiring at least 1,000 feet between different vacation rentals. This restriction is referend to herein as the "Spacing Requirement."

34.     Section 113.107.B.2 arbitrarily limits the total number of overnight occupants and any vacation rental to a total of 10 individuals without regard to the size of the property, the lot or any of its facilities or amenities.

35.     Section 113.107.C arbitrarily limits the total number of individuals who may be present at a vacation rental at any given time to a total of 14 individuals without regard to the size of the property, the lot or any of its facilities or amenities.

36.     Section 113.107.F prohibits "special events," which are not defined, on vacation rentals, and states as follows: "Special events, outdoor events, lawn parties, weddings, reunions, or similar activities are not allowed."

37.     Section 113.107.A of the Ordinance requires the Owner of a Vacation Rental to designate a Local Contact Person to be available twenty-four (24) hours a day during rental periods and who must be within forty-five (45) minutes travel time of the permitted property.

38.     Sections 113.108.C and 113.108.F of the Ordinance impose two ongoing disclosure obligations on property owners.  Section 113.108.C requires owners to maintain for a period of three years a detailed occupancy log identifying renters, contact information, and dates of stay, and to produce those records to the Township upon request (the "Three-Year Mandatory Rental Log Requirement").

39.     Section 113.108.F requires Owners to report when the vacation rental property will be rented prior to the rental actually occurring by reporting the dates of rentals in an upcoming month on the 1st of the month in which the rentals are to occur (the "Prospective Rental Reporting Requirement").

40.     Section 113.112 of the Ordinance established the following enforcement procedures:

A. The Township shall designate an enforcement officer(s) for this ordinance.

B. Once an alleged incident is reported to the Vacation Rental Local Contact Person, the Local Contact Person shall report the alleged incident to the enforcement officer within 72 hours.

C. Within 48 hours of receipt of the alleged incident report, the enforcement officer will discuss the alleged incident(s) with the complainant(s), the Vacation Rental Local Contact Person and the Vacation Rental property Owner.

D. When the enforcement officer receives a direct complaint, the enforcement officer shall contact the Vacation Rental Local Contact Person within 72 hours and attempt to discuss the incident and resolution.

E. The enforcement officer shall determine whether an incident did or did not occur and inform all parties involved of that disposition. In the process of determining whether an incident occurred, the enforcement officer may require the Owner to provide the rental log maintained and may hold and use those records as evidence if the enforcement officer determines it is appropriate to issue a citation or seek judicial relief."

41.     Section 113.113 of the Ordinance establishes the following with respect to violations:

12

A. Any of the following conduct is a violation of this Ordinance:

1. Any advertising or leasing of a vacation rental without first obtaining a vacation rental license.

2. The owner has failed to comply with any provisions, standards, or conditions contained in this ordinance or any other ordinance of the Township, County, and/or State and/or Federal law.

3. Any false or misleading information provided in the application process.

4. Any person who knowingly files a fraudulent, false, or fictitious complaint about a vacation rental shall be deemed to be in violation of this ordinance and may be subject to court enforcement proceedings and the penalties under this Ordinance.

B. The penalties for violations specified in subsection A. are as follows:

1. The first violation within any twelve (12) month period shall result in a notice of violation delivered to the property Owner by mail.

2. The second violation within any twelve (12) month period shall result in a municipal civil infraction and a fine of $1,500.

3. The third and/or subsequent violation(s) within any twelve (12) month period shall result in a municipal civil infraction and a fine of $5,000 and/or up to 90 days in jail.

4. If there are one or more violations each year during any three (3) year period, or three (3) violations in a single calendar year, the license shall be revoked.

C. All Owners, regardless of their interest in the property, shall be responsible for the civil infraction.

D. The Township Zoning Administrator, enforcement officer, and other officials designated by the Township Board are hereby designated as the authorized officials to issue municipal civil infraction citations directing alleged violators of this ordinance to appear in court. Each day the violation remains may be a separate offense."

42. Section 113.114 of the Ordinance provides for revocation of STR Permits and appellate procedures in the event of such a revocation.

13

43.     Section 113.114.A.1 designates the "Milton Township Board" as the appellate reviewer and decision maker regarding questions of STR Permit revocation.

44.     Pursuant to Section 113.114.A.5 "[t]he Owner may appear before the Township Board to orally present his/her appeal. After discussion, the Board shall determine by vote whether the appellant has established a prima facie case that the revocation decision appealed was erroneous."

45.     Pursuant to Section 113.114.A.6, "[i]f the Township Board determines that a prima facie case has not been established, it will so notify the appellant and the appeal will be denied."

46.     Pursuant to Section 113.114.A.7, "[i]f the Township Board determines that prima facie case has been established or that extenuating circumstances exist, they may reinstate the license with or without conditions.

47.     The Ordinance provides no insight regarding what conditions may be imposed on a reinstated STR Permit nor does it provide any indication when or why such conditions might be established by the Board.

48.     Further, the Ordinance provides no guidance or standards for how to evaluate whether an appellant made a "prima facie case that the license issuance or denial decision appealed was erroneous."

49.     The express goal of these arbitrary violation, revocation and appeal procedures is to gradually and overtime reduce to zero short term rentals in the Township.  As the Township's zoning administrator plainly stated: "[Owners who] lose their license, or sell the property, [no longer have] a vacation rental license.  In time, through attrition, vacation rentals will cease to exist within the Township." Ex. 2 at 1.

## Class Allegations

50.    Plaintiffs bring this action individually and pursuant to Federal Rule of Civil Procedure 23(a) & (b)(2) on behalf of all property owners who have engaged in STRs, including those who hold STR permits or have applied for such permits, all of which are ostensibly bound and impacted by the terms of the Vacation Rental Ordinance.

51.    The proposed Class consists of three subclasses:

a.  All current owners of properties used as STRs prior to the adoption of the STR Ordinance on November 29, 2025;

b.  All current or prior permitees issued STR Permits.

c.  All applicants or potential applicants for STR Permits who did not previously have an STR Permit, and who do not qualify for a Permit under the amended Ordinance.

52.    The proposed Class consists of at least thirty-five (35) Class Members at a minimum. As the Ordinance acknowledges, the permitted properties and thus the STR Permits may have multiple owners, and "[a]ll Owners, regardless of their interest in the property, shall be responsible for [a] civil infraction" under the Ordinance.

53.    For example, in the Township's records, STR Permits 2025-03, 2025-11, 2025-19, 2025-31, and 2025-24 all list more than one owner under the "Owner Name" column of a spreadsheet of issued STR Permits.

54.    The Township's spreadsheet of STR applicants reflects how the applicants for those STR permits characterized ownership of the property to be permitted at the time of their application, but it does not constitute a complete list of individuals who might qualify as "Owners" under the Ordinance and thus be subject to responsibility for civil infractions of it.

55. As a result, while the precise size of the Class and subclasses cannot be determined from simple reference to the number of outstanding STR Permits, it certainly exceeds that minimum number, is likely to contain more than thirty-five (35) Class Members, and is sufficiently numerous to make class action the most practical and efficient method for Class Members to secure the redress requested herein.

56. Defendants have acted, failed to act, and/or will continue to act on grounds generally against the interests of Plaintiff and all Class Members in an equivalent manner.

57. Every issue presented in this action and each question of law sought to be resolved is common among all Class Members. Each claim pleaded herein presents a facial challenge to the validity of the Ordinance which is equally applicable to all Class Members or otherwise seeks a declaration which would resolve a question of law universal to all Class Members' rights under the Ordinance.

58. The violations of law alleged by the named Plaintiffs are typical of the legal violations suffered by all Class Members.

59. Plaintiffs, as class representatives, will fairly and adequately protect the interests of all Class Members, will vigorously prosecute this suit on behalf of the Class, and will be representing the Class Members with highly experienced counsel.

60. A class action is superior to all other available means of the Class Members to achieve fair and efficient adjudication of the controversies presented herein because the joinder of all members is impractical. The prosecution of separate actions would substantially impair and impede the ability of individual class members to protect their interests.

61. Further, because this action does not seek damages (or otherwise because the damages to be recovered are potentially low), because of the small scale nature of the Class

16

Members' short term rental operations, because of the small size of the Township and concerns about potential retribution from the Township, and because of the burden and expense with maintaining litigation of this nature, the individual Class Members are unlikely to individually prosecute their own actions.

62.     Maintenance of this action as a class action would promote the efficient and convenient administration of justice and ensure the highest level of protection for the rights and interests of all Class Members.

63.     Undersigned counsel have been retained to represent the Plaintiffs in this action and Plaintiffs have agreed to pay a reasonable fee and costs for counsel's services.

## COUNT 1
### (Violation of Equal Protection, Ordinance sections 113.104, 113.108(C), (F))
### (No Rational Basis to Discriminate between Bed and Breakfasts and Vacation Rentals)

64.     Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

65.     Any party may assert an equal protection claim based on allegations that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

66.     Here, the Ordinance intentionally and explicitly, but unreasonably and without any rational basis, exempts bed and breakfasts as permitted by Township Ordinance Section 117.1604 from all of the Ordinance's requirements.

67.     Pursuant to section 117.1604 of the Milton Township Zoning Ordinance, the only standards for bed and breakfasts are as follows:

> "A. Basic Standards. It is the intent to establish reasonable standards for Bed and Breakfast Establishments to assure that:

> 1. The property is suitable for transient lodging facilities.

17

2. The proposed use shall be compatible with other allowed uses in the vicinity.

3. Lands in these districts shall not be subject to increased trespass.

4. The impact of the establishment shall be no greater than that of a private home with house guests.

5. A bed and breakfast shall maintain a smoke detector in proper working order in every sleeping room and a fire extinguisher in proper working order on every floor.

6. Landscaping and Buffering shall be provided in accordance with Section 117.311 of this Zoning Ordinance.

B. Specific Standards. The following requirements together with any other applicable requirements of this Ordinance shall be complied with:

1. The minimum lot size shall be one (1) acre except in the Village zoning district where the minimum lot area shall be consistent with the District minimum for Single Family Dwellings.

2. Not less than one (1) parking space per rental sleeping room shall be provided plus one (1) per owner occupant. Parking areas shall be screened from view from all off-site locations.

3. One (1) non-illuminated sign identifying the establishment not to exceed four (4) square feet in area located not closer, than ten (10) feet from the right-of-way shall be allowed.

4. The establishment shall have at least two (2) door exits to the outdoors.

5. The establishment shall be limited to no more than three (3) guest rooms and be the principal dwelling unit on the property and shall be owner-occupied at all times.

6. The on-site wastewater treatment system shall be approved by the Health Department for the proposed use and occupancy.

7. Guest stays shall not exceed seven (7) nights.

8. The rooms utilized for sleeping shall be a part of the primary residential use and not specifically constructed for rental purposes.

9. The guest rooms shall have a minimum floor area of one hundred (100) square feet for two (2) occupants with an additional thirty (30) square feet for each

additional occupant to a maximum of four (4) occupants per room.

10. Special land use approval shall not be granted if the essential character of the lot, or structure, or neighborhood in terms of traffic generation, or appearance, or activity will be changed substantially.

11. The site plan shall incorporate a floor plan layout of the proposed structure drawn to a scale of not less than 1" = 16' that shows the specific layout of the proposed facility in accord with the provisions of this Zoning Ordinance."

68.     Pursuant to the Milton Township Zoning Ordinance, bed and breakfasts may be permitted by the Township in the R-1 (residential), Agricultural, and Village zoning districts, the same zoning districts in which Plaintiff's and Class Members' STR Permitted properties are located.

69.     Pursuant to the Township's ordinances, both vacation rentals and bed and breakfasts represent transient lodging facilities.

70.     Both vacation rentals and bed and breakfasts are required to have some form of constant monitoring of renters by an individual able to resolve issues with renters, in the case of vacation rentals, the designated "Local Contact Person," and in the case of bed and breakfasts, the occupying owner(s).

71.     There is no material difference between vacation rentals and bed and breakfasts except that, under the ordinance, bed and breakfasts have no limitations on number of stays in a year or in a four-week period, resulting in substantially more overnight visitors who are apparently the reason reporting requirements are necessary for vacation rentals.

72.     Indeed, the Ordinance at section 113.104 needed to specifically define the term "Vacation Rental" to exclude bed and breakfasts because they would have otherwise plainly fallen under the definition provided for vacation rentals and be subject to the requirements of the Ordinance due to their common description and operations.

19

73.    However, vacation rentals are treated substantially differently than bed and breakfasts with respect to their operations for no discernable reason despite serving equivalent purposes and having equivalent operations.

74.    Bed and breakfasts are not required to keep any records at all, let alone to communicate the contents of any records it might have to the Township for any reason.

75.    A bed and breakfast is not required to keep a rental log, nor does it need to report rentals prior to their occurrence, despite being explicitly intended to offer the same kind of transient lodging in residential settings within the same zoning districts as offered by the Vacation Rentals.

76.    A bed and breakfast does not need to show a rental log to the Township in order to receive a special use permit under the Milton Township Zoning Ordinance which will allow it to operate.

77.    The Township treats vacation rentals differently than equivalent bed-and-breakfast operations without any rational explanation. The Ordinance thus violates the Equal Protection Clause by imposing severe restrictions on short-term rentals while exempting functionally indistinguishable bed-and-breakfast uses. Both uses involve the transient occupancy of residential property by paying guests and generate identical externalities. The disparate treatment is therefore arbitrary and not rationally related to any legitimate governmental interest.

78.    The Township has intentionally targeted Plaintiffs and all Class Members for unfair and disparate treatment in comparison to a similarly situated operation, the bed and breakfasts, through the Ordinance's sections 113.104, 113.108(C), (F) in plain violation of the Equal Protection rights of Plaintiff and Class Members as established in the Fourteenth Amendment to the United States Constitution.

20

## COUNT 2
### (Violation of  Right to Free Speech, 113.108.F)
### (Requirement to Convey Prospective Rental Information to Township)

79.     Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

80.     "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech [and therefore is] consider[ed] as a content-based regulation of speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988). Accordingly, "[t]he right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" *Id.* (quoting *Wooley v. Maynard,* 430 U.S. 705, 714 (1977)).

81.     Section 113.108.F of the Ordinance mandates speech by obligating an owner of a vacation rental to collect, retain, and actively communicate information about the renters of the owner's vacation rental property to the Township in relation to the Owner's commercial operations of the vacation rental.

82.     Historically, the Township has randomly requested rental logs without any justification or rationale for such request.  The process has been arbitrary, retaliatory and irrational. However, through these requests, and through the STR permit application process, the Township has had access to rental records.

83.     The prospective rental reporting requirement in section 113.108.F of the Ordinance has no rational relationship to any legitimate goal or other feasible governmental interest served by compelling Plaintiffs', and all Class Members' speech in violation of their First Amendment Rights under the United States Constitution.

## COUNT 3
### (Violation of Right Against Unreasonable Search and Seizure, 113.108.C & F))

**(Requirement to Preemptively Turnover Rental Records)**

84.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

85.    "'[A]bsent consent, exigent circumstances, or the like,' the Fourth Amendment requires that the subject of an administrative search be afforded 'an opportunity to obtain precompliance review before a neutral decisionmaker.'" *City of Los Angeles v. Patel*, 576 U.S. 409, 412 (2015), *quoted in Wheely USA, Inc. v. City of New York*, No. 26-CV-1057 (CM), 2026 WL 972924, at *12 (S.D.N.Y. Apr. 10, 2026).

86.    Sections 113.108.C & F of the STR provides for the maintenance of rental records which must be turned over to the Township at a predetermined time or otherwise upon the Township's request—without any review or determination by a "neutral decisionmaker."

87.    Owners must comply with the requirements or otherwise risk accruing violations of the Ordinance which could subject them to fines, jail time, and revocation of their STR Permit.

88.    Both the Owner's obligation to turn over the vacation occupancy log upon the Zoning Administrator's request and the Owner's obligation to provide rental information prior to the occurrence of the rental require the Owner to turn over its private business records without any meaningful opportunity for pre-compliance review of the reasonableness of the Township's demand for records.

89.    In *Patel*, 576 U.S. at 420, the Supreme Court found a Fourth Amendment violation where hotel operators were required to maintain records of guest stays and provide such information to police officers on demand. The same logic applies to the Township's Three-Year Mandatory Rental Log Requirement.

90. Without providing for any, let alone meaningful, pre-compliance review, the Ordinance's reporting requirements in sections 113.108.C & F constitute an unreasonable search and seizure of Plaintiffs' and all Class Members' otherwise private commercial records in violation of Plaintiffs' and all Class Members' Fourth Amendment Rights under the United States Constitution.

## COUNT 4
### (Violation of Equal Protection, § 113.105.B)
### (Rolling Vacancy Requirement)

91. Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

92. The Fourteenth Amendment to the United States Constitution guarantees that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

93. The Ordinance imposes a "rolling vacancy requirement" on short-term rental properties, prohibiting owners from renting their properties for more than two weeks within a defined rolling period of four weeks regardless of the nature, intensity, or impact of the use. §113.105.B.

94. The rolling vacancy requirement treats STR properties differently from other similarly situated property uses, including but not limited to bed-and-breakfast establishments, longer-term rentals, and other residential or transient lodging uses, which are not subject to comparable temporal occupancy restrictions.

95. The rolling vacancy requirement is not rationally related to any legitimate governmental interest. To the extent the Township asserts interests such as reducing noise, traffic, or overuse of residential properties, those concerns turn on the nature and intensity of occupancy—not on whether a property was rented during a prior, arbitrarily defined time period.

23

96.     By prohibiting STR occupancy during certain rolling periods while permitting identical occupancy at other times, the Ordinance draws arbitrary temporal distinctions that do nothing to mitigate the harms it purports to address.

97.     The rolling vacancy requirement is also underinclusive and internally inconsistent, as it permits other forms of occupancy that produce equal or greater impacts while singling out STR properties for uniquely burdensome treatment.  Consequently, the Ordinance's rolling vacancy requirement is irrational, arbitrary, and not grounded in any real or substantial relation to the public health, safety, or welfare. It instead operates as a mechanism to suppress or discourage STR activity—which is the very intent of the restriction.

### COUNT 5
### (Violation of Substantive Due Process, § 113.105.B)
### (Rolling Vacancy Requirement)

98.     Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

99.     The Fourteenth Amendment to the United States Constitution prohibits state and local governments from depriving persons of property without due process of law.

100.    Plaintiffs possess constitutionally protected property interests in the use, enjoyment, and economic exploitation of their real property, including the right to rent their properties to lawful occupants.

101.    The rolling vacancy requirement is arbitrary and irrational. It does not regulate the *actual impacts* of property use—such as noise, traffic, parking, or occupancy levels—but instead imposes a temporal restriction untethered, and in many cases inconsistent with, those concerns.

102.    The harms the Township purports to address, if any, depends on how a property is used at a given time—not on whether it was occupied during a prior, arbitrarily defined period.

24

103. By prohibiting occupancy during certain rolling periods while permitting identical occupancy at other times, the Ordinance draws irrational temporal distinctions that bear no real or substantial relation to public health, safety, or welfare.

104. The rolling vacancy requirement is also unduly oppressive and confiscatory in effect. It significantly impairs Plaintiffs' ability to make economically viable use of their properties by artificially restricting occupancy in a manner that serves no legitimate purpose.

105. The Ordinance's structure reveals that its true purpose and effect are not to regulate impacts, but to suppress or discourage STR activity through arbitrary constraints. Government action that is arbitrary, irrational, or not substantially related to a legitimate governmental objective violates substantive due process.

106. Any ordinance restricting a property owners' right must bear some rational relationship to a legitimate governmental interest under the Fourteenth Amendment of the United States Constitution. The Rolling Vacancy Requirement does not reduce the total annual rental time, does not reduce occupancy, does not reduce parking, does not reduce septic use, etc. The Requirement merely dictates the sequencing of permitted weeks. The Requirement constitutes a backdoor effort to impinge on the property owners' rights. Put simply, if six nonconsecutive weeks per year are not harmful to the character of the Township, six consecutive weeks logically also are not harmful—as is demonstrated by the fact that the Township would not treat six consecutive weeks as an STR. Similarly, if a rental of 31-days is not harmful, so too a rental of three consecutive weeks is demonstrably less harmful. Once the Township determined that six weeks of transient occupancy per year, or more than 31 consecutive days, do not undermine residential character, it cannot constitutionally dictate the order in which the rental weeks occur absent evidence that sequence *itself* causes harm.

107.    Accordingly, sections 113.105.B of the Ordinance are in plain violation of the Substantive Due Process rights of Plaintiffs and Class Members as established in the Fourteenth Amendment to the United States Constitution.

## COUNT 6
### (Violation of Substantive Due Process, 113.106.A)
### (Spacing Requirement)

108.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

109.    Section 113.106(A)(a) of the Milton Township Vacation Rental Ordinance provides that Vacation Rentals must maintain a minimum separation distance of one thousand (1,000) feet between properties, measured from nearest property line to nearest property line (the "Spacing Requirement").

110.    Tellingly, the Township's consultant and Township Zoning Administrator recommended on October 8, 2025 that the Township omit any spacing requirement because "no new licenses are being offered …." Ex. 2, at 1.  However, at its October 20, 2025, meeting the Township Board included the Spacing Requirement after the Town counsel noted that "eliminating STRs can make the township vulnerable to lawsuits." *See* Minutes of October 20, 2025 Township Board Meeting, attached as Exhibit 3.

111.    The Spacing Requirement categorically prohibits Plaintiffs and members of the Class from using their residential properties as Vacation Rentals solely because another permitted Vacation Rental exists within 1,000 feet of their property.

112.    The Spacing Requirement does not regulate occupancy, noise, parking, septic capacity, traffic, events, quiet hours, or any other conduct occurring at a property. Instead, it operates solely as a geographic exclusion device that permanently bars otherwise lawful

26

residential use based entirely on proximity to another property.

113.    The Spacing Requirement bears no rational relationship to any legitimate governmental interest, including but not limited to preservation of residential character, prevention of nuisance, protection of public health and safety, or mitigation of burdens on municipal services.

114.    The Spacing Requirement arbitrarily distinguishes between otherwise identically situated property owners based solely on geographic happenstance. A property located 998 feet from an existing Vacation Rental is categorically prohibited from obtaining a permit, while a property located 1,002 feet away is permitted, notwithstanding that the properties are similarly situated in all material respects.

115.    The Spacing Requirement functions as a de facto numerical cap on the number of Vacation Rentals within the Township and operates to freeze market entry, permanently foreclosing Plaintiff and similarly situated property owners from lawful residential use of their property.

116.    By imposing an arbitrary and irrational geographic exclusion unrelated to public health, safety, or welfare, Defendants have deprived Plaintiffs and members of the Class of their protected property interests without due process of law.

117.    The Spacing Requirement therefore violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

**COUNT 7**
**(Violation of Substantive Due Process – Arbitrary Six-Week Cap)**
**(Fourteenth Amendment – U.S. Constitution)**

118.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

119.    Section 113.105.A of the Milton Township Vacation Rental Ordinance provides that a dwelling unit used as a Vacation Rental "shall not be rented for more than six (6) weeks during a calendar year."

120.    This six-week limitation imposes an arbitrary and irrational restriction on the use of private residential property.

121.    The Ordinance already regulates the specific impacts that the Township contends justify regulating vacation rentals, including but not limited to occupancy limits, parking requirements, quiet hours, maximum number of persons on the property, prohibition of special events, and density restrictions between vacation rental properties.

122.    Because those operational controls directly address noise, traffic, parking, septic capacity, and other potential impacts associated with temporary guests, the total number of weeks a property is rented during a year bears no rational relationship to the protection of public health, safety, or welfare.

123.    The six-week limitation does not regulate occupancy levels, parking demand, septic usage, noise, or any other activity occurring on the property. Instead, it arbitrarily limits the economic duration of an otherwise lawful residential use.

124.    Moreover, the Ordinance defines a "Vacation Rental" as a rental of thirty (30) days or less. As a result, a property owner may lawfully rent the same dwelling for nearly the entire year through consecutive 31-day rentals, yet the owner may rent the property for only six weeks if the stays are thirty days or fewer.

125.    This distinction demonstrates that the six-week cap is not rationally related to the prevention of neighborhood impacts, because the presence of occupants for thirty days versus thirty-one days does not meaningfully alter traffic, noise, occupancy, or infrastructure demands.

126.    By allowing extended rentals that exceed thirty days while severely restricting rentals of thirty days or less, the Ordinance arbitrarily distinguishes between otherwise identical residential uses that generate the same effects on surrounding properties and Township services.

127.    The six-week cap therefore bears no real or substantial relationship to any legitimate governmental interest and instead operates as an irrational limitation on property owners' ability to make lawful use of their homes.

128.    Because the restriction is arbitrary and capricious and lacks any rational connection to the Township's stated objectives, Section 113.105.A violates Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution.

129.    Accordingly, Section 113.105.A of the Ordinance is facially unconstitutional and unenforceable.

### COUNT 8
### (Equal Protection Clause: Arbitrary Six-Week Annual Cap)

130.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

131.    The Equal Protection Clause requires that similarly situated persons be treated alike.

132.    The Ordinance imposes a six-week annual cap on STR use while permitting comparable uses—including bed-and-breakfast establishments, longer-term rentals, and other transient lodging uses—to operate without similar durational limits.

133.    STRs and the other potential uses are similarly situated in that they involve the occupancy of residential property by paying guests and generate comparable impacts, if any, on traffic, noise, density, and neighborhood character.

134.    The disparate treatment is not rationally related to any legitimate governmental interest.

135.    To the extent the Township asserts interests such as controlling noise, traffic, or density, those concerns are unrelated to the total number of weeks a property is rented over the course of a year.

136.    The six-week cap is both overinclusive (banning low-impact rentals) and underinclusive (permitting comparable rentals or greater impacts from other uses). The cap operates as a de facto 90% ban on STR activity (since for 90% of the year, STRs would be banned) and reflects arbitrary and irrational line-drawing.

137.    The Equal Protection Clause prohibits such arbitrary classifications.

138.    The six-week annual cap therefore violates Plaintiffs' rights to equal protection.

### COUNT 9
**(Unconstitutional Taking – Deprivation of Economically Viable Use)**
**(Fifth and Fourteenth Amendments – U.S. Constitution:  Six-Week Cap)**

139.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

140.    The Fifth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

141.    Section 113.105.A of the Milton Township Vacation Rental Ordinance limits the rental of residential property as a vacation rental to no more than six weeks during a calendar year.

142.    Prior to the adoption of this restriction, Plaintiffs and members of the Class lawfully were permitted to rent their properties for short-term stays without any comparable annual limitation.

143.    The six-week limitation substantially interferes with Plaintiffs' and Class Members' ability to derive economic value from their property by prohibiting the overwhelming majority of otherwise lawful short-term rental activity. Again, the result is that for nearly 90% of the year, they are prohibited from short term rentals.

144.    Because the Ordinance defines a "Vacation Rental" as a rental of thirty days or less, the six-week limitation prevents property owners from engaging in the ordinary and economically viable practice of renting their homes to short-term guests throughout the year.

145.    The restriction dramatically reduces the income-producing capacity of Plaintiffs' properties and destroys the primary economic use for which many such properties were purchased, maintained, and operated.

146.    The Ordinance therefore deprives Plaintiffs and similarly situated property owners of economically viable uses of their residential property.

147.    The severe economic impact of the six-week cap, combined with the interference with Plaintiffs' reasonable investment-backed expectations regarding the lawful use of their property as short-term rentals, constitutes a regulatory taking.

148.    The Ordinance requires Plaintiffs to bear burdens that should properly be borne by the public as a whole, without providing any mechanism for compensation.

31

149.    Accordingly, Section 113.105.A effects an unconstitutional taking of Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT 10
### (Violation of Substantive Due Process: Arbitrary Ten-Person Cap)

150.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

151.    The Ordinance imposes a blanket restriction prohibiting more than ten guests from occupying a vacation rental property, regardless of the size, design, bedroom count, square footage, parking availability, septic capacity, or other objective characteristics of the property. STR § 113.107.B.2.

152.    The ten-guest limitation is arbitrary and irrational because it bears no substantial relationship to any legitimate governmental interest in health, safety, noise prevention, traffic control, or neighborhood preservation.

153.    Many residential properties within the Township, including Plaintiffs' properties, contain five or more bedrooms and were specifically designed, constructed, marketed, and historically used to accommodate substantially more than ten overnight occupants safely and comfortably.

154.    The Ordinance fails to account for objective occupancy-related considerations commonly used in residential regulation, including square footage, available parking, lot size, bedroom count, fire-code occupancy limits, or septic-system capacity.

155.    The Ordinance instead imposes an inflexible numerical cap untethered to any individualized assessment of a property's actual capacity to safely accommodate occupants.

156.    The Township permits owner-occupied residences, long-term rentals, family

gatherings, and other residential uses to accommodate numbers of persons exceeding ten, while selectively imposing the restriction upon short-term rentals.

157.    The ten-guest limitation substantially interferes with Plaintiffs' use and enjoyment of their properties and materially impairs the economic viability and marketability of the properties as vacation rentals.

158.    The limitation is arbitrary, unreasonable, and oppressive, and lacks a real or substantial relation to public health, safety, morals, or general welfare.

159.    By enacting and enforcing the ten-guest limitation, Defendants, acting under color of state law, have deprived Plaintiffs of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 11
### (Violation of Substantive Due Process: Arbitrary Fourteen-Person Property Presence Limitation)

160.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

161.    The Ordinance imposes a restriction prohibiting more than fourteen persons from being present at a vacation rental property at any one time during the daytime, regardless of the size, layout, bedroom count, lot size, parking availability, septic capacity, or other objective characteristics of the property. STR § 113.107.C.

162.    The fourteen-person presence limitation applies not merely to overnight occupants, but to all persons physically present on the property, including temporary visitors, family members, invitees, and social guests.

163.    The limitation is arbitrary and irrational because it imposes a rigid and inflexible numerical cap untethered to any individualized assessment of a property's actual ability to safely

33

and reasonably accommodate persons on the premises.

164. Many residential properties within the Township, including Plaintiffs' properties, contain expansive indoor and outdoor areas, substantial parking capacity, and infrastructure capable of safely accommodating substantially more than fourteen persons.

165. The Ordinance fails to account for objective considerations commonly associated with occupancy and land-use regulation, including square footage, lot size, building design, fire-code occupancy standards, septic-system capacity, or available parking.

166. The fourteen-person presence cap bears no real or substantial relationship to any legitimate governmental interest in health, safety, noise prevention, traffic management, or neighborhood preservation.

167. The Ordinance irrationally prohibits ordinary and historically accepted residential activities, including family gatherings, shared meals, holiday celebrations, reunions, and daytime social visits, solely because the property is used as a short-term rental.

168. The Township permits owner-occupied residences, long-term rentals, and similarly situated residential properties to host substantially more than fourteen persons without imposing comparable restrictions.

169. The Ordinance selectively burdens vacation-rental properties without any rational basis for distinguishing them from other residential uses with identical physical characteristics and impacts.

170. The fourteen-person presence limitation substantially interferes with Plaintiffs' use, enjoyment, marketability, and economically beneficial use of their properties.

171. The limitation is unreasonable, oppressive, arbitrary, and capricious, and lacks a genuine and substantial relation to the public health, safety, morals, or general welfare.

34

172.    By enacting and enforcing the fourteen-person presence limitation, Defendants, acting under color of state law, have deprived Plaintiffs and Class Members of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 12
### (Violation of Substantive Due Process – Seven-Day Minimum)

173.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

174.    The Ordinance imposes a mandatory minimum rental period of seven consecutive nights for short-term vacation rentals within the Township (the "Seven-Day Minimum Requirement"). STR § 113.105.C.

175.    The Seven-Day Minimum Requirement substantially interferes with Plaintiffs' lawful use, occupancy, leasing, and economic enjoyment of their real property.

176.    Plaintiffs possess constitutionally protected property interests in the use, leasing, alienation, and economic exploitation of their homes and vacation rental properties.

177.    The Seven-Day Minimum Requirement is arbitrary, irrational, and not reasonably related to any legitimate governmental interest.

178.    The Township has asserted generalized concerns regarding noise, traffic, parking, density, neighborhood character, and transient occupancy. But the Seven-Day Minimum Requirement bears no real or substantial relationship to those purported objectives.

179.    A renter who occupies a property for six days presents no materially different impact than a renter who occupies the same property for seven nights. Likewise, shorter stays do not inherently generate more noise, congestion, parking demand, or nuisance activity than longer stays.

35

180.    The Seven-Day Minimum Requirement is both underinclusive and overinclusive. It is underinclusive because it exempts or fails to regulate other forms of occupancy and lodging that may create identical or greater impacts. It is overinclusive because it categorically prohibits peaceful, ordinary, and otherwise lawful shorter-duration rentals irrespective of actual impacts or conduct.

181.    The Seven-Day Minimum Requirement operates as a de facto prohibition on a substantial portion of the lawful short-term rental market and materially diminishes the economic utility and value of Plaintiffs' properties.

182.    The restriction is especially irrational because the Ordinance already contains numerous other operational regulations purportedly aimed at addressing neighborhood concerns, including occupancy limits, parking restrictions, noise provisions, registration requirements, and enforcement mechanisms. The Seven-Day Minimum Requirement is therefore redundant, punitive, and untethered to any genuine regulatory necessity.

183.    The Seven-Day Minimum Requirement constitutes an arbitrary and capricious exercise of police power that impermissibly infringes upon Plaintiffs' protected property rights.

184.    The Seven-Day Minimum Requirement "fails to advance a legitimate governmental interest" in a rational and non-arbitrary manner and therefore violates substantive due process protections guaranteed by the Fourteenth Amendment to the United States Constitution.

185.    Accordingly, Section 113.105.C should be declared unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT 13
**(Violation of First Amendment Right of Association – Special Event Ban)**

36

186.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

187.    The Ordinance prohibits "special events" at Plaintiffs' vacation rental properties (the "Special Event Ban"). STR § 113.107.F. The Special Event Ban applies to all "outdoor events, lawn parties, weddings, reunions or similar activities." *Id.*

188.    The Special Event Ban substantially burdens Plaintiffs' and their guests' rights of expressive and intimate association protected by the First and Fourteenth Amendments to the United States Constitution.

189.    The right of association protects individuals' ability to gather with family members, friends, social acquaintances, religious groups, and other persons for expressive, social, celebratory, familial, political, religious, and recreational purposes.

190.    The Special Event Ban impermissibly restricts gatherings that are otherwise lawful and constitutionally protected, including family reunions, holiday celebrations, weddings, anniversaries, religious observances, political discussions, charitable gatherings, and other social events occurring within private homes.

191.    The Ordinance prohibits such gatherings based not on objectively measurable conduct such as noise, parking, nuisance activity, or unlawful behavior, but instead based on the undefined and subjective characterization of a gathering as a "special event."

192.    The Special Event Ban is not narrowly tailored to serve a significant or compelling governmental interest.

193.    The Township possesses numerous less restrictive means to address legitimate concerns relating to noise, traffic, parking, occupancy, disorderly conduct, or nuisance activity,

37

including generally applicable nuisance ordinances, noise regulations, parking restrictions, occupancy limits, and law-enforcement mechanisms.

194. The Special Event Ban burdens substantially more associational activity than necessary to achieve any legitimate governmental objective.

195. The challenged Special Event Ban chills and deters constitutionally protected gatherings and association within Plaintiffs' homes and rental properties.

196. By prohibiting protected gatherings and associational activity, Defendants, acting under color of state law, have violated and continue to violate Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

197. Accordingly, Section 113.107.F should be declared unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

## COUNT 14
**(Void For Vagueness Under Fourteenth Amendment– Special Event Ban)**

198. Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

199. The Ordinance prohibits "[s]pecial events, outdoor events, lawn parties, weddings, reunions or similar activities" at vacation rental properties. STR § 113.107.F.

200. The Ordinance fails to define the term "special event" or "similar activities" with sufficient clarity to provide ordinary persons fair notice of what conduct is prohibited.

201. The terms "special event" and "similar activities" are inherently subjective, indefinite, and susceptible to varying interpretations by property owners, guests, neighbors, code enforcement officials, and law enforcement personnel.

38

202.    The Ordinance provides no objective standards by which property owners may determine whether ordinary social activity constitutes a prohibited "special event" or "similar activity."

203.    Under the Ordinance, it is unclear whether prohibited "special events" include birthday parties, anniversaries, home church services, Shabbat dinner, family dinners, holiday gatherings, weddings, business retreats, graduation celebrations, charitable events, or ordinary social gatherings among guests and invitees.

204.    The absence of clear standards invites arbitrary, discriminatory, and inconsistent enforcement.

205.    The Ordinance grants Township officials unbridled discretion to determine on an ad hoc basis what constitutes a prohibited "special event."

206.    The vagueness of the challenged provision chills lawful and constitutionally protected activity because property owners and guests cannot reasonably determine what conduct may subject them to penalties, citations, enforcement proceedings, or loss of rental privileges.

207.    Because the Special Event Ban fails to provide fair notice and encourages arbitrary and discriminatory enforcement, it is void for vagueness under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### COUNT 15
**(Violation of Substantive Due Process– Special Event Ban)**

208.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

209.    Plaintiffs possess constitutionally protected property interests in the use, occupancy, enjoyment, leasing, and economic utilization of their real property.

210.    The Special Event Ban, STR § 113.107.F, substantially interferes with Plaintiffs' lawful use and enjoyment of their properties.

211.    The Special Event Ban is arbitrary, irrational, and not reasonably related to any legitimate governmental interest.

212.    The prohibition broadly bans undefined categories of gatherings and activities regardless of their size, nature, duration, actual impacts, or whether they create any noise, traffic, nuisance, or public safety concerns.

213.    A quiet family reunion, anniversary dinner, holiday gathering, or wedding ceremony held at a property may be prohibited under the Ordinance even if the gathering causes no disturbance whatsoever.

214.    Especially troubling is the Special Event Ban on so-called "lawn parties" or outdoor social gatherings occurring on private residential property. Ordinary outdoor gatherings among family members, friends, guests, invitees, religious groups, or social acquaintances constitute commonplace and traditionally protected uses of residential property. The Township cannot constitutionally prohibit peaceful outdoor assembly and social interaction on private property based merely on the fact that persons congregate outdoors or on a lawn absent objectively demonstrable nuisance conduct such as excessive noise, unlawful activity, or actual threats to public safety. A categorical prohibition targeting undefined "lawn parties" and/or "outdoor events" is arbitrary, overbroad, and impermissibly burdens protected associational and property rights.

215.    The Township already possesses numerous less restrictive regulatory tools to address legitimate concerns regarding noise, parking, overcrowding, nuisance activity, disorderly conduct, traffic, or public safety, including generally applicable ordinances and enforcement

mechanisms. The Special Event Ban is therefore redundant, overbroad, and untethered to any actual nuisance-based standard.

216. The Special Event Ban impermissibly substitutes subjective governmental disapproval of certain gatherings for legitimate land-use regulation grounded in objective impacts.

217. The Special Event Ban bears no real or substantial relationship to the public health, safety, morals, or welfare and instead constitutes an arbitrary and capricious exercise of police power.

218. By enacting and enforcing the Special Event Ban, Defendants, acting under color of state law, have violated Plaintiffs' substantive due process rights under the Fourteenth Amendment to the United States Constitution.

219. Accordingly, the Special Event Ban should be declared unconstitutional under the Fourteenth Amendment on substantive due process grounds.

## COUNT 16
### (Violation of Due Process - Void for Vagueness, Section 113.112)

220. Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

221. The Ordinance's enforcement procedures make repeated references to "incidents" without ever defining the meaning of that term.

222. The Ordinance under section 113.112.B requires the Local Contact Person, who may be and in the case of Plaintiff is the same as the Owner, to report any alleged "incident" to the designated enforcement officer within 72 hours.

223. Failure to do so subjects the Owner to the consequences for violation of the Ordinance, including fines, jail time, and STR Permit revocation, whether for failure to comply

41

with the provisions of the Ordinance under section 113.113.A.2 or under the Owner's obligation to ensure the requirements of the Ordinance are met by the designated Local Contact Person under section 113.108(A).

224.    However, without a definition of the term "incident" or any explanation regarding how an alleged incident is formally reported to the Owner/Local Contact Person such that it triggers the obligation to notify the enforcement officer, Plaintiffs and all Class Members are left unable to discern if or when they may have violated the Ordinance and might become subject to fines, jail time, or revocation of their STR Permit.

225.    The term "incident" is unsustainably ambiguous and vague.

226.    The Ordinance's enforcement procedures do not provide any person, let alone an ordinary person, with the ability to discern whether failure to report an errant comment or communication from a neighbor, renter, or passerby will subject the Owner to liability for a violation of the Ordinance.

227.    The Ordinance's enforcement procedures as established in section 113.112 are impermissibly and unsustainably vague in violation of Plaintiffs' and all Class Members' Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

### COUNT 17
### (Violation of Procedural Due Process, Section 113.114)

228.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

229.    The Ordinance's revocation procedures in section 113.114 provide no guidance to the Milton Township Board or its members on when revocation of a license is appropriate, beyond providing the Board with options in the event it does or does not determine that a prima facie case was established for the Township's revocation of the relevant STR Permit.

230.    The Ordinance provides no directive for the Board to explain its decision for revocation to an Owner, let alone require any writing that might memorialize that explanation.

231.    The Ordinance does not define a prima facie case for revocation (or that the revocation was erroneous), nor does it provide the Board with guiding principles to be employed in evaluating appeals, thus giving the Board unfettered discretion to make decisions and revoke or reinstate licenses however it decides.

232.    The Board need only notify the Owner of its decision to reinstate the license with or without conditions (the Ordinance does not describe what those conditions may be) or to deny the appeal.

233.    Even if an appellant successfully demonstrates on appeal to whatever standard may apply that the STR Permit revocation was entirely erroneous, the Board is still empowered to, at its sole discretion and with no guidance, limitations, or explanation, impose whatever onerous conditions it desires on the reinstated STR Permit, an STR Permit which should have never been revoked in the first place.

234.    The lack of any discernable standards and the opaque decision making structure in the permit revocation appeals process under the Ordinance invites arbitrary, intentionally selective, and baseless results from the appellate review process provided for in section 113.114 of the Ordinance while taking no steps to guard against that possibility in a process by which the Owner might ultimately lose their STR Permit entirely in violation of Plaintiffs' and all Class Members' Due Process rights under the Fifth and Fourteenth Amendment of the United States Constitution.

## COUNT 18
### (Declaratory Relief: Grandfathering)

235.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth

43

herein.

236.    Pursuant to 28 U.S.C.§§ 2201 and 2202, this Court has authority to issue declaratory judgment in cases of actual controversy within its jurisdiction.

237.    Michigan Compiled Laws § 125.3208(1) provides that "[i]f the use of a dwelling, building, or structure or of the land is lawful at the time of enactment of a zoning ordinance or an amendment to a zoning ordinance, then that use may be continued although the use does not conform to the zoning ordinance or amendment."

238.    Based on the statutory grandfathering provided for in MCL § 125.3208 and on the face of the Ordinance itself, Plaintiffs and all Class Members are entitled to continue use of their STR Permitted properties as Vacation Rentals despite non-compliance with the provisions of the novel Amendment because their use of the properties as Vacation Rentals preceded the Amendment of the Ordinance, i.e., a municipal zoning ordinance.

239.    An actual controversy within the Court's jurisdiction exists with respect to Plaintiffs' and all Class Members' obligations to comply with the new requirements of the Amendment in light of the applicability of MCL § 125.3208.

240.    Plaintiff and all Class Members are entitled to a declaration regarding the applicability of MCL § 125.3208 to the Ordinance.

241.    Further, based on the constitutional deficiencies with the Ordinance identified herein, an actual controversy within the Court's jurisdiction exists with respect to the identified constitutional defects of the Ordinance.

242.    Plaintiffs and all Class Members are entitled to a declaration regarding the constitutionality of the Ordinance's sections challenged in this Complaint and regarding the applicability of statutory grandfathering of MCL § 125.3208 to the Ordinance.

## COUNT 19
### (§ 1983—Deprivation of Constitutional Rights Under Color of Law)

243.    Plaintiffs incorporate and reallege the Common Allegations as if fully set forth herein.

244.    This count is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

245.    At all times relevant, Defendants were acting under color of state law.

246.    The challenged provisions of the Milton Township Vacation Rental Ordinance constitute official municipal policy adopted and enforced by Milton Township through its governing body, the Milton Township Board.

247.    The enactment, maintenance, and enforcement of the challenged provisions were undertaken pursuant to formal legislative action of the Township and therefore represent official policy for purposes of municipal liability under 42 U.S.C. § 1983.

248.    Through the enactment and enforcement of the challenged provisions, Defendants have deprived Plaintiffs and members of the Class of rights secured by the Constitution of the United States, including but not limited to rights guaranteed by the First, Fourth, and Fourteenth Amendments.

249.    The constitutional violations alleged herein are ongoing and will continue unless declaratory and injunctive relief is granted.

250.    As a direct and proximate result of Defendants' actions under color of state law and pursuant to official municipal policy, Plaintiffs and members of the Class have suffered and will continue to suffer deprivation of constitutionally protected rights.

251.    Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202.

252.    Plaintiffs further seek an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable law.

## Prayer for Relief

WHEREFORE, Plaintiffs and all Class Members pray this Court grant the following relief:

a.    Certify this case as a class action, certifying Plaintiffs as Class Representatives and designating undersigned counsel as Class Counsel;

b.    Define the Class to include all persons or entities which (i) presently hold an STR Permit issued by the Township prior to November 29, 2025, the effective date of the Amendment; (ii) have obtained a Permit since the adoption of the amended Ordinance on November 29, 2025; and/or (iii) seek a Permit but do not qualify for issuance of a permit due to the amended Ordinance's prohibitions;

c.    Enter an order awarding judgment in favor of Plaintiffs and the Class;

d.    Enter an order declaring the Ordinance to be a zoning ordinance for purposes of the application of MCL § 125.3208 and declaring that Class Members are entitled to grandfathering from compliance with the Ordinance back to the iteration of the Ordinance which existed at the time of the respective Class Member's initial permitting, so long as they have remained in continuous operation as short-term rentals each year since the original permitting;

e.    Enter an order declaring the Ordinance sections 113.108(C), (F) to be facially unconstitutional violations of Plaintiff's' and all Class Members' rights to equal protection under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of those sections;

46

f.    Enter an order declaring the Ordinance section 113.108(F) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Free Speech rights under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of that section;

g.    Enter an order declaring the Ordinance sections 113.108(C), (F) to be facially unconstitutional violations of Plaintiffs' and all Class Members' rights to be free of unreasonable searches and seizures under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of those sections;

h.    Enter an order declaring the Ordinance section 113.105(B) (Rolling Vacancy Requirement) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Equal Protection and Due Process rights under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of that section;

i.    Enter an order declaring the Ordinance section 113.106 (Spacing Requirement) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Equal Protection and Due Process rights under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of that section;

j.    Enter an order declaring the Ordinance section 113.105.A (Six Week Annual Cap) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Equal Protection and Due Process rights under the United States Constitution, and to constitute a

47

confiscatory taking, and enjoining Defendants from citing Plaintiffs and all Class Members for violations of the Six Week Annual Cap;

k.       Enter an order declaring the Ordinance section 113.107.B.2 (Ten Person Cap) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Due Process rights under the United States Constitution, and to constitute a confiscatory taking, and enjoining Defendants from citing Plaintiffs and all Class Members for violations of the Ten Person Cap;

l.       Enter an order declaring the Ordinance section 113.107.C (Fourteen Person Presence Cap) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Due Process rights under the United States Constitution, and to constitute a confiscatory taking, and enjoining Defendants from citing Plaintiffs and all Class Members for violations of the Fourteen Person Presence Cap;

m.       Enter an order declaring the Ordinance section 113.105.C (Seven Day Minimum Rental) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Equal Protection and Due Process rights under the United States Constitution, and to constitute a confiscatory taking, and enjoining Defendants from citing Plaintiffs and all Class Members for violations of the Seven Day Minimum Rental;

n.       Enter an order declaring the Ordinance section 113.107.F (Special Event Ban) to be a facially unconstitutional violation of Plaintiffs' and all Class Members' First Amendment, Equal Protection and Due Process rights under the United States Constitution, and to constitute a confiscatory taking, and enjoining Defendants from citing Plaintiffs and all Class Members for violations of the Special Event Ban;

o.       Enter an order declaring the Ordinance section 113.112 to be unconstitutionally vague and thus a facially unconstitutional violation of Plaintiffs' and all Class Members' Due

Process rights under the United States Constitution and enjoining Defendants from citing Plaintiffs and all Class Members for violations or upholding STR Permit revocations premised on violations of the obligation to report undefined "incidents";

p.      Enter an order declaring the Ordinance section 113.114 to be a facially unconstitutional violation of Plaintiffs' and all Class Members' Due Process rights under the United States Constitution and enjoining the Board from imposing any conditions on STR Permits which are reinstated following a successful appeal;

q.      Enter an order enjoining all Defendants from pursuing enforcement or revocation actions or upholding a revocation on appeal against Plaintiffs or any Class Members pursuant to alleged violations of any of the new requirements or restrictions added to the Ordinance by amendment after their initial permitting by the Township;

r.      Enter an order for an award of all costs and expenses incurred in pursuing this action, including attorney fees and expenses pursuant to all other applicable laws, rules, or statutes;

s.      Enter an order for all such other legal and equitable relief as the Court deems just and proper.

Dated:  May 22, 2026                    Respectfully submitted,

                                        LAW OFFICE OF JOEL A. HARRIS, PLLC
                                        21142 Mack Avenue, Suite 100
                                        Grosse Pointe Woods, MI, 48236
                                        Telephone:  (313) 886-4505

                                        By: /s/   **Joel A. Harris**
                                            Joel A. Harris (P69934)
                                            jaharris27@gmail.com

                                                and

                                        COFFEY BURLINGTON, P.L.

49

2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone:  (305) 858-2900

By:   /s/     **Paul J. Schwiep**
    **Paul J. Schwiep**, *pro hac vice* forthcoming
    PSchwiep@CoffeyBurlington.com
    **Tori Simkovic**, *pro hac vice* forthcoming
    TSimkovic@CoffeyBurlington.com
    YVB@CoffeyBurlington.com
    service@CoffeyBurlington.com

    *Counsel for Plaintiffs*